Document Number   Case Number
                  07-CR-0094-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
09/24/2007 02:22:30 PM CDT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                    Plaintiff,

    v.

BRUCE RHODES,

                   Defendant.

REPORT AND
RECOMMENDATION

07-CR-94-C

---

### REPORT

The grand jury has charged defendant Bruce Rhodes with one count of unlawful possession of child pornography based on evidence seized during the execution of a state search warrant. Before the court for report and recommendation is Rhodes's motion to quash the search warrant for lack of probable cause and lack of good faith reliance by the executing officers. For the reasons stated below, I am recommending that this court deny this motion.

### I. The Warrant Application

On January 15, 2007, Marshfield Police Detective Darren Larson sought and obtained from the Wood County Circuit Court a search warrant for Bruce Rhodes's apartment in Marshfield. The objects of the search were video clips of child pornography that Detective Larson believed would be found on Rhodes's computer. Detective Larson supported his warrant request with a three paragraph affidavit reporting information provided by Rhodes's three roommates, one of whom was his girlfriend. Rhodes has retyped the affidavit in his motion to suppress, *see* dkt. 10 at 2-3.

By way of synopsis, on January 15, 2007, Detective Larson met with Stephine Edict, Victor Pilsner and Nicholas Frischman, who all resided with Rhodes in Apt. #3 at 130 Central Avenue, Marshfield. Edict reported that she was Rhodes's girlfriend, shared his bedroom, and had his permission to use his computer. The day before, on January 14, 2007, Edict had been reviewing the "My Pictures" file on Rhodes's computer when she found and viewed at least three video files which depicted "very young females that she estimated were approximately 6 - 9 years old that were performing oral sex and masturbating the erect penises of adult males." Dkt. 10 at 2. Edict alerted Pilsner and Frischman, who also looked at the images. Pilsner confirmed Edict's account, describing the video images to Detective Larson as "young white females approximately 6-9 years old that were performing oral sex on the penis of adult males." *Id.* at 3. Pilsner reported that these video files were dated October, November and December, 2006. Frischman reported that the three of them had watched several video files on Rhodes's computer "that depicted naked young girls that he estimated were 9 - 13 years old." *Id.* After looking at these images, the three roommates agreed that they should call the police.

The court issued the requested warrant, police officers executed it on January 16, 2007 and seized Rhodes's computer, which contains the images alleged to be child pornography.

## II. Analysis

To uphold a challenged search warrant, a reviewing court must find that the affidavit provided the issuing court with a substantial basis to determine the existence of probable cause. This standard requires review for clear error by the issuing court. "We will not invalidate a

2

warrant by interpreting the affidavit in a hypertechnical rather than a common sense manner."
*United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001).  Doubtful cases are resolved in favor
of upholding the warrant.  *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Probable cause to support a warrant exists if the affidavit sets forth sufficient evidence
to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.
The inquiry is practical, not technical.  *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir.
2007).  Sometimes, the sum of the probable cause circumstances is greater than their individual
parts, establishing in their totality a fair probability that contraband will be found in the
suspect's residence.  *United States v. Caldwell*, 423 F.3d 754, 761 (7th Cir. 2005).  That's why it
is inappropriate to consider each piece of evidence individually in a "divide and conquer"
approach; rather the focus must be on what the evidence shows as a whole.  *Id.* at 760.  As the
Court noted in *Brinegar v. United States*, 338 U.S. 160 (1949),

> In dealing with probable cause, . . . as the very name implies, we
> are dealing with probabilities.  These are not technical; they are the
> factual and practical considerations of everyday life on which
> reasonable and prudent men, not legal technicians act.

*Id.* at 175.

This is a low evidentiary threshold, requiring only a probability or a substantial chance
of criminal activity, not an actual showing of such activity. *United States v. Roth*, 201 F.3d 888,
893 (7th Cir. 2000), *quoting Illinois v. Gates*, 462 U.S. 213, 244 (1983).  A probable cause
determination does not require the resolution of conflicting evidence that the preponderance of
evidence standard requires.  *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003).  A report
from a single, credible eyewitness can provide the basis for probable cause.  *Woods v. City of*

*Chicago*, 254 F.3d 979, 996 (7th Cir. 2000)(civil lawsuit for false arrest).  Indeed, this is the essential holding of *United States v. Hall*, 142 F.3d, 988, 991, 994 (7th Cir. 1998)(probable cause established by computer repairman's report to state trooper of viewing on defendant's CPU images of ten-to-twelve year old boys engaging in actual or simulated anal intercourse).

Rhodes cites other Seventh Circuit cases to support his arguments that: (1) Detective Larson had investigative avenues available that he did not pursue; (2) other warrant applications in other cases were supported by more evidence or different types of evidence; and (3) Detective Larson did not sufficiently corroborate the reports of his informants.[1]  These arguments are non sequiturs.  This court's review of the challenged warrant is limited to the information actually provided to the issuing court.  *See Gower v. Verlcer*, 377 F.3d 661, 668 (7th Cir. 2004)(arrest case); *cf. United States v. Reed*, 349 F.3d 457, 463 (7th Cir. 2003) (justification for arrest cannot be an *ex post* extrapolation of all crimes that might have been charged on the facts).  Therefore the question is not whether Detective Larson could have or should investigated further, it is whether his presentation to the court was sufficient to establish probable cause.  *Cf. United States v. Swanson*, 210 F.3d 788, 790-91 (7th Cir. 2000)(search warrant affiant's failure to investigate further is not a reason to hold a *Franks* hearing; *a fortiori*, this failure cannot be material to the probable cause determination).

---

[1]  Rhodes cites *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005)(suppression issue was staleness of the information); *United States v. Angle*, 234 F.3d 326, 329-35 (7th Cir. 2000) (a chat room predator investigation that included an FBI child pornography sting); *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (untested informant with an admitted grudge against defendant did not provide enough specific details about defendant or his alleged drug dealing to establish probable cause); *United States v. Koerth*, 312 F.3d 862, (7th Cir. 2002)(no probable cause from conclusory statements by untested informant who presents no indicia of reliability; however, good faith doctrine rescues the warrant).

Also unpersuasive is Rhodes's characterization of his roommates as untested informants in need of corroboration.  As the Seventh Circuit stated in *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520 (7th Cir. 2001), a § 1983 civil lawsuit for false arrest,

> When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible.  When probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further.  . . . [E]vidence of interviews and investigations is not in any way a prerequisite to a finding of probable cause.

*Id.* at 524, citations and internal quotes omitted.

Here, the evidence presented to Detective Larson came not from favor-currying confidential informants or anonymous tipsters with axes to grind, they came from three self-identified citizen witnesses who voluntarily contacted the police to turn in a roommate/friend/lover because of the disturbing images they all saw on his computer.  These people had no apparent motive to lie about Rhodes or to curry favor with the police, so there was no reason for Detective Larson to doubt their accounts of what they had seen.

Although it would have strengthened the probable cause presentation if Detective Larson had asked Edict to show him the images on Rhodes's computer, it was a defensible decision for Detective Larson to obtain a court's imprimatur before taking a look, thereby forestalling any claim by Rhodes that Edict transmogrified into a law enforcement agent when she re-opened his videos at police direction.

The next question is whether the reports by the three witnesses were sufficient to establish that the videos constituted evidence of a crime. The answer is "Yes." 18 U.S.C. § 2256(8) defines "child pornography" as:

> any visual depiction of sexually explicit conduct and where . . . the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct . . ..

18 U.S.C. § 2256(1) defines a "minor" as any person under the age of eighteen years. The statute defines "sexually explicit conduct" to include "masturbation" and "actual or simulated sexual intercourse, including . . . oral-genital." *Id*. at § 2256(2)(A)(I) & (iii). Edict and Pilsner gave similar, detailed descriptions of what they saw on the clips, and both descriptions clearly fall within the definition of child pornography. Frischman's account is much more generic, so it adds little to the probable cause determination. But neither does it detract much from the determination because it is not clear that Frischman disagreed with Edict's and Pilsner's descriptions of what they saw. There could have been many non-impeaching reasons for Frischman's vague report, including the possibility that Detective Larson neglected to provide details that might have made Frischman's account more consistent with Edict's and Pilsner's.

This segues to Rhodes's suggestion that Detective Larson may have "round-tabled" his witnesses, interviewing all three at once. This is possible, but as the government points out, Detective Larson's presentation of the three accounts suggests that he interviewed the witnesses separately. *See* Brief in Opposition, dkt. 12, at 3. Even if Detective Larson did interview the roommates *en masse*, there still was probable cause to support the warrant. At least two citizen witnesses who presented no indicia of unreliability provided graphic descriptions of sexually

6

explicit activity by minors.  Although neither Edict nor Pilsner provided a foundational basis for

their age estimate of the victims, the age ranges they picked ( 6 to 9, 9 to 13) were so far below

18 that there cannot be any serious concern that they might have mistaken adult women for

minors, and no serious doubt that they were capable of offering valid opinions as to the victims'

minority.  *See* F.R. Ev. 701 (non-experts may offer opinions or inferences that are rationally

based on their perceptions, helpful to determining a fact in issue, and not based on scientific or

other specialized knowledge).  In short, this warrant application was amply supported by

probable cause.


## II. The Good Faith Doctrine

In *United States v. Leon,* 468 U.S. 897, 914 (1984) the Court held that:

> In a doubtful or marginal case a search under a warrant may be
> sustainable where without one it would fall.
>
> * * *
>
> We have . . . concluded that the preference for warrants is most
> appropriately effectuated by according great deference to a
> magistrate's determination.  Deference to the magistrate, however,
> is not boundless.

Having so stated, the Court then held that:

> In the absence of an allegation that the magistrate abandoned his
> detached and neutral role, suppression is appropriate only if the
> officers were dishonest or reckless in preparing their affidavit or
> could not have harbored an objectively reasonable belief in the
> existence of probable cause.

*Id.* at 926.

Such determinations must be made on a case-by-case basis with suppression ordered "only in those unusual cases in which exclusion will further the purpose of the exclusionary rule." 468 U.S. at 918. When the officer's reliance on the warrant is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule because it is

> painfully apparent that the officer is acting as a reasonable officer would and should act in similar circumstances. . . . This is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope. . . . Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the [court's] error rather than his own cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id*. at 920-21, internal quotations omitted.

The Court noted the types of circumstances that would tend to show a lack of objective good faith reliance on a warrant, including reliance on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or reliance on a warrant so facially deficient that the officer could not reasonably presume it to be valid. *Id*. at 923. The Court observed that "when officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Id*. at 924. *See also Arizona v. Evans*, 514 U.S. 1, 11-12 (1995) (reaffirming the Supreme Court's reluctance to suppress evidence obtained in good faith but in violation of a defendant's Fourth Amendment rights). Put another way, an officer's decision to obtain a warrant is *prima facie* evidence that he was acting in good faith, and it is the defendant's burden to demonstrate rebut this presumption. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007).

Rhodes contends that Detective Larson's search warrant affidavit was so bare-bones that he could not reasonably have considered the resulting warrant valid.  As discussed in the first 6½ pages of this report and recommendation, there *was* probable cause to support this warrant.  If a reviewing court were to conclude otherwise, then it is indisputable that an affidavit presenting cross-corroborating, detailed accounts of a crime from two unimpeachable eyewitnesses is not a bare-bones application upon which it was unreasonable for Detective Larson to rely.  If it were necessary, the good faith doctrine would save this warrant.  Rhodes is not entitled to suppression of the evidence.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Bruce R. Rhodes's motion to dismiss the indictment and deny his motion to suppress evidence.

Entered this 24th day of September, 2007.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                           Telephone
STEPHEN L. CROCKER                                                          (608) 264-5153
U.S. Magistrate Judge

September 24, 2007

Elizabeth Altman
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53703-1585

Brian Mullins
Federal Defender Services of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

Re:___United States v. Bruce Rhodes
Case No. 07-CR-0094-C

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before October 5, 2007, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by October 5, 2007, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

10

/s/ S. Vogel for
Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge